**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                  )
**ANTHONY BRAGDON,**                              )
                                                  )
          **Plaintiff,**          )
                                                  )
         **v.**                     )     **Civil Action No. 06-0258 (JR)**
                                                  )
**THE UNITED STATES OF AMERICA,**                 )
                                                  )
         **Defendant.**          )
_____)

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION**
**TO DEFENDANT'S SUPPLEMENTAL MOTION TO DISMISS**

The Defendant, through counsel, the United States Attorney for the District of Columbia, respectfully submits this reply to Plaintiff's Opposition to Defendant's Supplemental Motion to Dismiss. Defendant submits that Plaintiff has failed successfully to rebut the arguments advanced by Defendant in its Supplemental Motion to Dismiss. Accordingly, Plaintiff's remaining claims should be dismissed pursuant to Fed. R. Civ. P. 12 (b) (1) or (6).

## I.  INTRODUCTION

Plaintiff's opposition to Defendant's Supplemental Motion to Dismiss ("Pl. Opp.") fails to demonstrate that this Court has subject matter jurisdiction over the Plaintiff's claims (to the extent that the statute of limitations is determinative of a waiver of sovereign immunity by the United States) or that the Plaintiff has set forth actionable claims. Much of Plaintiff's Opposition is a partial tribute to the old adage, "If you don't have the law on your side, argue the facts." The tribute is only partial because Plaintiff does not argue facts but instead recites allegations. Furthermore, the allegations argued (even if true) are often irrelevant to the legal issues in this case.

When Plaintiff does attempt to "argue the law," he misinterprets precedent and inaccurately applies it to his allegations. His ineffective attempts to preserve these claims unmask the true nature of his case. This case was never about Defendant's negligence. Plaintiff's initial Complaint contained only allegations of intentional torts. <u>See</u> Pacer Dkt. 1. Realizing that such allegations were not cognizable under the Federal Torts Claims Act ("FTCA"), Plaintiff filed his First Amended Complaint which included allegations of negligence. <u>See</u> Pacer Dkt. 10. Rather than being a cognizable claim, Plaintiff's strained, time barred allegations of negligence are nothing more than a proverbial lifeboat for his sinking FTCA claims.

This "lifeboat" is not seaworthy, nonetheless. Plaintiff's negligence claims cannot survive Defendant's Motion to Dismiss for the following reasons: (1) they are barred by the statute of limitations; (2) Plaintiff failed to exhaust his remedies because he did not plead negligence at the administrative level; and (3) these negligence claims are subject to the discretionary function exception. Therefore, this Court should dismiss the remaining negligence claims.

## II.  <u>ARGUMENT</u>

### A.  **The Statute of Limitations bars Plaintiff's negligence claims since the limitations period began, at the latest, when Plaintiff moved to set aside his conviction.**

Plaintiff erroneously argues that his negligence claims were timely filed under 28 U.S.C. § 2401(b). He does not contest that the statute of limitations begins to run on an FTCA claim when the cause of action accrues. <u>See</u> Plff. Opp. at 3 (quoting 28 U.S.C. 2401 (b)) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . "). However, Plaintiff incorrectly asserts that

the accrual date is March 14, 2003, the date on which the Superior Court for the District of Columbia set aside Plaintiff's conviction. Id. at 4.

Plaintiff bases his legally faulty conclusion on a misapplication of case law regarding the accrual dates of FTCA claims. He asserts that Heck v. Humphrey, 512 U.S. 477, 487 (1994), "prohibits a prisoner from asserting a claim based upon acts that resulted in a conviction until that conviction is set aside in some fashion." Pl. Opp. at 4. Plaintiff alleges that the FBI negligently hired, trained, and supervised Malone and that the FBI and Malone were negligent in their investigation of Plaintiff's case. Am. Compl. at ¶¶ 18-25. Plaintiff's claims, to the contrary, do not necessarily implicate the invalidity of his criminal conviction and seek to address broader, more systemic government operations than the more limited alleged misconduct that resulted in his conviction, so Heck does not apply to this case. Compare Plaintiff's negligent hiring, training, and supervision claim, Am. Compl. at ¶ 25 ("**As a result of the United States' breaches of duty**, Plaintiff suffered compensable injury and is entitled to damages in an amount to be more fully proved at trial.") with Plaintiff's recently dismissed false imprisonment claim, Am. Compl. at ¶ 29 ("**As a result of Plaintiff's unjustified imprisonment**, Plaintiff is entitled to damages from the United States in an amount to be more fully proved at trial." (Emphasis added.))

Heck resolved the question of whether money damages premised on an unlawful conviction could be pursued under § 1983. Id. at 480. The Supreme Court in Heck held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. at 486-87.

This holding concerned an action under § 1983. Furthermore, Defendant's alleged negligent actions

would not render Petitioner's conviction or sentence invalid. Unlike Plaintiff in the instant case, the

plaintiff in Heck did not allege negligent hiring and supervision against the United States, for

example. See Id. at 479 ("The complaint alleged that respondents, acting under color of state law,

had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest;

'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved

[petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be

used at petitioner's trial.").

Even if the Defendant did negligently hire, supervise and train its employees (and/or

negligently investigate Plaintiff's case), such a finding of negligence, standing alone, would not

necessarily have constituted a sufficient defect in the case against Plaintiff to compel Plaintiff's

acquittal of the charges against him. See Id. at 487 ("the district court must consider whether a

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or

sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the

conviction or sentence has already been invalidated. But if the district court determines that the

plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal

judgment against the plaintiff, the action should be allowed to proceed."). The Court in Heck stated

that an action for damages in an unreasonable search case would lie even if the search produced

evidence that resulted in a defendant's "still outstanding conviction" because the doctrines of

inevitable discovery, independent source, and harmless error would not necessarily imply that the

plaintiff's conviction was unlawful. Id. at n. 7. Thus, contrary to Plaintiff's arguments, Heck does

4

not stand for the proposition that Plaintiff's negligence claims could only have accrued after his conviction was set aside.

Plaintiff argues that "Federal Appellate decisions have extended the reasoning in Heck to prohibit claims under the FTCA until the conviction is extinguished." Pl. Opp. at 4. Plaintiff cites two cases (non-controlling precedent) in support of this assertion: (1) Parris v. U.S., 45 F.3d 383 (10th Cir. 1995) and (2) Hinton v. U.S., 91 Fed. Appx. 491 (6th Cir. 2004). These cases are clearly distinguishable.

In Parris, the plaintiff, a prisoner, filed an action for damages under FTCA. Parris, 45 F.3d at 383. The plaintiff there alleged that the Assistant Federal Public Defender who represented him in the criminal proceeding committed legal malpractice which resulted in his conviction and incarceration. Id. The court analyzed plaintiff's claims and found that although they took the form of negligence, they were in substance another attempt at getting the court to review the basis of his conviction. See Id. ("While Mr. Parris's cause of action is couched in terms of negligence, he is actually seeking further review of the basis for his conviction."). After noting the substance of the plaintiff's claims, the court quoted Heck: "If 'a judgment in favor of the plaintiff **would necessarily imply the invalidity of his conviction or sentence** ... the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" Id. (citing Heck, 45 F.3d at 384-85; emphasis added). Ultimately, the court affirmed the district court's grant of summary judgment for the defendant government because the plaintiff "had failed to show that his convictions have been declared invalid or otherwise called into question." Id. at 385.

Plaintiff incorrectly relies on Parris when arguing that he could not advance his negligence claims until his conviction was set aside. See Pl. Opp. at 34. Like Heck, Parris does not stand for

5

this principle.  As noted above, the plaintiff in <u>Heck</u> did not allege negligence but rather only spoke of the defendant's "knowing" "unlawful" and "arbitrary" acts.  Similarly, the plaintiff in <u>Parris</u> alleged negligence but the court aptly recognized that allegation was nothing more than a thin veil, unartfully hiding his  challenge to the validity of his conviction which had already been affirmed on direct appeal.  <u>See</u>  45 F.3d at 383, 385.  Mr. Parris' complaint only made passing reference to negligence while actually emphasizing the defendant's intentional wrongdoing.  <u>See</u> <u>id.</u> at 383. Parris alleged that the government "falsified evidence," that a government witness lied and that his attorney had failed to produce exculpatory evidence.  <u>Id.</u>

After recognizing that the plaintiff had not truly pled negligence claims, the court properly classified the action as one in which a judgment in favor of plaintiff would necessarily imply the invalidity of his conviction.  <u>See</u> <u>id.</u> at 385.  Since Parris' conviction had not been invalidated, he could not maintain the suit under the FTCA.  In contrast, here, Plaintiff appears to have properly pleaded negligence claims.  As noted, a finding of negligence would not necessarily have invalidated Plaintiff's claims, so Plaintiff could have maintained a negligence suit under the FTCA even before his conviction was set aside.

Like <u>Heck</u> and <u>Parris</u>, <u>Hinton v. U.S.</u>, 91 Fed. Appx. 491 (6th Cir. 2004) provides no authority for Plaintiff's flawed claim that the statute of limitations for filing his FTCA claims did not begin to run until his conviction was set aside.  <u>Hinton</u> also makes no mention of negligence and contained no language regarding the statute of limitations but rather involved a prisoner suing for the return of property that he claimed prison officials had wrongfully confiscated from him.  <u>Id</u>. Federal prison officials had convicted the plaintiff in prison disciplinary proceedings on charges of forging or counterfeiting a notary public's seal on documents while he was incarcerated.  <u>Id.</u>  The

confiscated documents were the ones that were alleged to have been forged. Id. The court determined that awarding damages due to the confiscation of the documents would "necessarily implicate the continued validity of his prison disciplinary conviction." Id. at 493 (citing Heck, 512 U.S. at 486-87).

Once again, the substance of the plaintiff's claim was the determining factor which foreclosed recovery under the FTCA. The substance of the claims in Hinton and the instant case differ substantially in their effect on the underlying conviction. Accordingly, Hinton provides no support for Plaintiff's argument that the statute of limitations began to run when Plaintiff's conviction was set aside. The very cases cited by Plaintiff establish that the Heck rule is not one-dimensional and merely "prohibits a prisoner from asserting a claim based upon acts that resulted in a conviction until that conviction is set aside in some fashion." Pl. Opp. at 3. Such an interpretation of Heck is a oversimplification at best and a distortion at worst. Plaintiff cannot reasonably attempt to use this misinterpretation to derail well-settled principles governing accrual and tolling of limitations periods under the FTCA.

The general rule is that the claim accrues at the time of the plaintiff's injury. See Cronauer v. United States, 394 F.Supp.2d 93, 102 (D.D.C. 2005), citing United States v. Kubrick, 444 U.S. 111, 120 (1979); Garza v. U.S. Bureau of Prisons, 284 F.3d 930, 934 (8th Cir.2002); Stoleson v. United States, 629 F.2d 1265, 1268 (7th Cir.1980). However, even in a negligence case, in which the cause of plaintiff's harm was not readily apparent, the Supreme Court has ruled that an FTCA claim accrued when plaintiff learned of both the existence and the cause of his injuries, see Kubrick, 444 U.S. at 120-21, "and 'not at a later time . . .' when he knows that his injury was caused by the government's negligence." Cronauer, 394 F.Supp.2d at 102, quoting Kubrick, 444 U.S. at 113.

The nature and cause of these alleged harms were set forth in the Inspector General's report and the summary report received by Plaintiff in August 2001. Cf. Wallace v. Kato, ___ U.S. ___, 127 S.Ct. 1091, 1097-98 (2007) (statute of limitations commences to run when wrongful act or omission results in damages even though the full extent of the injury is not then known or predictable; rule unaffected by Heck v. Humphrey); Lederman v. United States, 131 F.Supp.2d 46, 61-62 (D.D.C. 2001) (cause of action for malicious prosecution and related charges did not accrue until criminal proceeding terminated in plaintiff's favor).

Minimally, as soon as Plaintiff learned about the falsity of the report and about the obvious fatal defect in the government's criminal case against him, his claim accrued. In his SF-95, submitted both to the FBI and DOJ, Plaintiff states that, in August 2001, he received a Special Report from the DOJ Inspector General, describing generally problems with falsified laboratory reports and specifically problems with a report in Plaintiff's criminal case. See Compl., Exhs. A & B, Attachment A. Further, it is undisputed that Plaintiff petitioned in the Superior Court of the District of Columbia to have his criminal conviction set aside on March 27, 2002. See Compl. at ¶ 19 and Exhibit 1, Pl's 3/27/02 Petition. Plaintiff was clearly aware, at this time, of both the nature and cause of his injury, at the earliest in August 2001 or the latest on March 27, 2002.[1]

Thereafter, Plaintiff had two years to file an administrative complaint setting forth his negligence claims. See 28 U.S.C. § 2401(b). Under § 2401(b), Plaintiff had to file these claims on or before March 2004. It is not disputed that Plaintiff instead filed on March 9, 2005, well outside

---

[1] The March 14, 2003 Order of the Superior Court of the District of Columbia setting aside Plaintiff's conviction, attached as Exhibit 2 to Defendant's Supplemental Motion to Dismiss (hereinafter "Deft. Supp. MTD"), of which this Court may take judicial notice, specifically finds that the government forwarded a copy of the Inspector General's Special Report to Plaintiff on August 13, 2001, and finds that Plaintiff, on March 27, 2002, filed his Petition to Set Aside, Vacate, and/or Correct Conviction and Sentence, or in the Alternative, for a Writ of Coram Nobis. Exh. 2, Deft. Supp. MTD, Super. Ct. Order at 5.

of the statute of limitations period.  See Compl. Exhibits A & B.  FTCA limitations periods must be strictly construed.  See Stokes v. United States Postal Service, 937 F.Supp. 11, 17 n. 17 (D.D.C. 1996)  (Plaintiff's claim was time barred even though it was filed only four days after the statute of limitations had run (citing Childers v. United States, 442 F.2d 1299, 1303 (5th Cir. 1971)).  Since Plaintiff's administrative claims were untimely, his FTCA claims should be dismissed for lack of subject matter jurisdiction.

> **B.    Plaintiff failed to exhaust his negligence claims because his administrative filings did not satisfy the presentment requirement under 28 U.S.C. § 2675 (a).**

Plaintiff baldly asserts that he "duly and correctly complied with the presentation requirements for the proper exhaustion of his claims."  Pl. Opp. at 4.  His rationale in support of this assertion, though, is rather convoluted.

This Circuit set down the proper presentment requirements under § 2675 in GAF Corp. v. United States, 818 F.2d 901, 917-21 (D.C. Cir. 1987).  These requirements are "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  GAF., 818 F.2d at 919 (some citations omitted).  Plaintiff maintains that he satisfied this two-prong test because his SF-95s provided "sufficient descriptions of his injury and furthermore stated his claims in an appropriate manner to enable the United States and the FBI to investigate what had actually occurred in the investigation and prosecution of Plaintiff Anthony Bragdon's criminal case."  Pl. Opp. at 6.  He also maintains that the 1997 OIG special report as well as the D.C. Superior Court Order and its accompanying opinion also sufficiently described the injury.  Id.

However, the SF-95s submitted did not provide any indication that allegations concerning negligent investigation, hiring, supervision, or training formed the basis of Plaintiff's claim. Like Plaintiff's original complaint, the SF-95s only allude to intentional torts. See Pl. Opp. at 6-9. Indeed, Plaintiff's citation to the summary statement of injury in Box #10 provides absolutely no notice to Defendant regarding his negligence claims. The language in Box #10 describes intentional torts – "false", "wrongful", and "malicious."[2] Compl., Exhs A & B.

Plaintiff attempts to use the Standard Form 95 attachment to further support his groundless argument that he properly presented his negligence claims under § 2675. Pl.Opp. at 7-9. This attachment only further demonstrates Plaintiff's blatant failure to present these claims at the administrative level. Any further detail that this supplement adds to Box #10 only shows that Plaintiff alleged intentional torts at the administrative level. The testimony of FBI personnel is alleged to be "false, incomplete, unsupported, and incorrect." Pl. Opp. at 8. Plaintiff also alleged that Defendant withheld exculpatory evidence from him and his counsel. Id. The Attachment stated that the Department of Justice's Special Report, issued in April 1997, "identified FBI personnel who had falsified work." Id. Plaintiff stated that the Superior Court's Order Granting Claimant's Petition on March 14, 2003 found that the "FBI witness' testimony was either false or not supported by said witness' notes, and further found that potential exculpatory facts regarding the fiber evidence was not disclosed." Id. None of these allegations come close to bringing together any of the basic

_____

[2] The only mention of negligence is the last sentence of Box 10: "Claimant was further caused to suffer injury and harm due to the intentional and/or negligent infliction of emotional distress." This reference was insufficient to inform the FBI and U.S. Department of Justice of any of the present negligence claims against the United States for the actions of employees who hired or supervised the officers accused of falsifying reports or testimony as set forth in Plaintiff's administrative claims. Thus, the bare allegation of negligent infliction of emotional distress (listed merely as an alternative to intentional infliction of emotional distress) provides no notice as to any claims of negligent investigation, training, hiring, or supervision. None of the other language in Box 10 suggests that these alleged acts of negligence played any role in Plaintiff's cause of action for negligent infliction of emotional distress.

elements of a claim for negligence: duty, breach of standard of care, causation, and damages. Indeed, there is no allusion to either a standard of care or the hypothetical reasonable person. Under even the most liberal interpretation, allegations of falsified work, falsified testimony, and withholding of exculpatory evidence do not "sound" in negligence and thus no reasonable person could conclude that Plaintiff was alleging negligence by the Defendant. Becker v. Colonial Parking, Inc., 409 F.2d 1130, 1134-35 (D.C. Cir. 1969) ("negligence is conduct that falls short of the reasonable care standard").

Plaintiff suggests that his failure timely to present his negligence claims should be excused because he misunderstood who was primarily responsible for his injuries. See Pl. Opp. at 9. Plaintiff explains that he initially believed that he had sustained injury due to the intentional and malicious wrongdoing of Agent Michael Malone. Id. However, he alleges that over time, it became "more evident that fault and responsibility for Plaintiff's injuries lies more clearly with the United States." Id. He reached this conclusion, reportedly, after some initial discovery in the companion Bivens case, Bragdon v. Malone, 1:05-CV-00488 (JR). Id. In making this argument, Plaintiff effectively admits that he was not contemplating negligence claims regarding other officials' conduct in hiring, training or supervision when he filed the SF-95 at the administrative level. Plaintiff's mind set is reflected in his SF-95, which is utterly devoid of references to these negligence claims.[3]

Plaintiff makes the conclusory assertion that the 1997 OIG special report as well as the D.C. Superior Court Order and its accompanying opinion also sufficiently described the Defendant's

---

[3] Moreover, under the discovery rule, a statute of limitations is not tolled because Plaintiff has failed to identify all responsible parties before the running of the limitations period. See Zeleznik v. United States, 770 F.2d 20, 24 (3rd Cir. 1985), cert. denied, 475 U.S. 1108 (1986) (discovery rule does not delay the accrual of a cause of action until the plaintiff has identified every party who may be liable on its claim); accord, Sexton v. United States, 832 F.2d 629, 634 (D.C. Cir. 1987) (knowledge of injury and cause is adequate to trigger running of limitations period even in situations where plaintiffs' knowledge is far more limited as to the character of the government agents' omission).

alleged negligence. Pl. Opp. at 6. Plaintiff did not attach any of these documents to either of the SF-95 forms filed by him. He quotes no language in either the report, order or opinion that would even intimate negligent acts by Defendant. Indeed, as Defendant previously argued, it is difficult to imagine how Plaintiff could hope to make out negligent training and supervision claims at the administrative level with anything but clear, unequivocal language, when it was a Department of Justice investigation that actually produced the report used by Plaintiff to set aside his conviction. See Defendant's Supplemental Motion to Dismiss (Pacer Dkt. 23) at 8.

Plaintiff clearly has failed to meet the presentment requirements of 28 U.S.C. § 2675. He did not provide the agencies involved with sufficient information to begin their own investigations in accordance with the standard established in GAF. He has failed to rebut successfully any of the arguments and supporting law presented by the Defendant in his Supplemental Motion to Dismiss requiring exhaustion of remedies. Therefore, he failed to exhaust his claims, and these negligence claims should be dismissed. See McNeil v. United States, 508 U.S. 106, 113 (1993) ("[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. Because petitioner failed to heed that clear statutory command, the District court properly dismissed his suit"). See also Industrial Constructors Corp. v. United States Bur. of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994) ("[B]ringing an administrative claim is a jurisdictional prerequisite to suit, imposed by Congress, which the courts have no power to waive"). This is true even if substantial litigation has taken place. See McNeil, 508 U.S. at 111-12.

**C.    The Discretionary Function Exception of FTCA bars Plaintiff's claims of negligent investigation, training, hiring and supervision.**

Plaintiff asserts that this Court has subject matter over all of his claims under the FTCA. Pl. Opp. at 12. These claims include: (1) negligence in Defendant's investigation and charging of Plaintiff; (2) the negligent management of the FBI's nonaccredited laboratory; and (3) the negligent hiring, training and supervision of FBI personnel. Id. While his meaning is not entirely clear, he argues that all of these claims encompass conduct involving more than merely a "discretionary function." Id. Thus, Plaintiff maintains that the discretionary function exception does not apply to his negligence claims and that this Court indeed has jurisdiction over these claims. Id. Plaintiff's contentions are without merit and fail to overcome Defendant's well-supported arguments to the contrary.

Plaintiff alleges that Defendant's acts "amount[ed] to more than acts considered merely discretionary." Pl. Opp. at 12. These acts include the non-existence of any lab certification, the absence of minimum hiring standards, lack of qualified training and oversight, and/or absence of written lab and personnel policy and procedures. Id. at 12-13.

Plaintiff's legal analysis of the discretionary function exception falls far short of what the law provides. He attempts to argue that the discretionary function does not apply by refering to a hypothetical discussed in United States v. Gaubert, 499 U.S. 315, 325 n.7 (1991). Plaintiff quotes Gaubert as follows: "If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." Pl. Opp. at 12

(citing Gaubert, 499 U.S. at 325, n.7). Plaintiff fails to expound upon this analogy any further, and the analogy itself is flawed to the extent that driving and performing sophisticated laboratory tests are not completely analogous to each other, either in the nature of the "discretion" involved or in the nature of any required hiring, training and supervision.

Plaintiff's argument concerning the inapplicability of the discretionary function exception to Defendant's alleged negligent acts goes no further than the bald assertion that "[n]egligence in the instant case amounts to more than acts considered merely discretionary." Pl. Opp. at 12. He fails to analyze Defendant's alleged actions under the two part test for application of the discretionary function exception (acts involving judgment or choice and the type of conduct that the discretionary function was intended to shield). See Sloan v. U.S. Dept. of Housing and Urban Development, 236 F.3d 756, 759-60 (D.C. Cir. 2001) (citing Gaubert, 499 U.S. at 322-23). Instead, he launches into descriptions of Defendant's alleged negligent acts that are without moment in any cogent discussion of the discretionary function exception.

If Plaintiff's allegations have any relevance to the issue of the application of the discretionary function exception, these allegations support Defendant's argument that the exception applies in this case. Plaintiff devotes several pages to excerpts of FBI Agent Michael Malone's deposition testimony in the now dismissed companion Bivens case. See Plff. Opp. at 14-19. This testimony shows that the Defendant's acts concerning training, investigation, supervision and procedure clearly fell within the two-part test set out in Gaubert and Sloan. Malone's testimony shows Defendant's acts involved judgment or choice and that the discretionary function was intended to shield this type of conduct.

14

Plaintiff offers excerpts of Malone's testimony that detail the training and procedures carried out in the FBI's Hair and Fiber Unit. <u>See</u> Plff. Opp. at 14-19. Malone described the length, content, and testing of the qualification process through which he became a Hair and Fiber Examiner. <u>See</u> <u>Id.</u> at 14-17. He also testified about the procedures for handling evidence and confirming conclusions through scientific tests. <u>See</u> <u>Id.</u> at 17-18. These matters undoubtedly involve judgment and choice. The discretionary function exception is intended to shield decisions regarding training, investigation and supervision because such public policy decisions are properly committed to agency discretion and expertise. <u>See</u> <u>Sloan</u>, 236 F.3d at 760, <u>quoting</u> and <u>citing</u> <u>Gaubert</u>, 499 U.S. at 323 (quoting <u>Berkovitz v. United States</u>, 486 U.S. 531, 537 (1988)) (Because the exception was designed to "prevent judicial second guessing of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort," the Court concluded that the exception "protects only governmental actions and decisions based on considerations of public policy.") <u>Accord</u> <u>Loughlin v. United States</u>, 286 F.Supp.2d 1, 8-9 (D.D.C. 2003) (internal quotations omitted).

Federal case authority establishes that general allegations of negligent investigation, hiring, training and supervision advanced by Plaintiff in the First Amended Complaint should be barred by the discretionary function exception. Defendant cited and discussed this authority in its Supplemental Motion to dismiss. Plaintiff has completely failed to rebut any of the substantial precedent cited by Defendant. Plaintiff has chosen instead to advance unsupported allegations rather than well-supported case authority. These allegations, however, do not aid (and in fact weaken) his argument that the discretionary function exception does not apply to Defendant's alleged acts of negligence. Accordingly, for the foregoing reasons, Plaintiff's negligence claims fail to trigger the

sovereign immunity waiver afforded by the FTCA and should be dismissed, given this Court's lack of subject matter jurisdiction over them.

### D.     Dismissal Under Fed. R. Civ. P. 12(b)(6) is Appropriate.

Plaintiff ends his opposition memorandum with a gross misapplication of Federal Rule of Civil Procedure 12(b)(6).  Pl. Opp. at 19-20.  Noting that the Court must assume that the facts pleaded in the Complaint are true and draw all factual inferences in favor of the non-moving party, Plaintiff takes a leap in reasoning and concludes that his facts were endorsed by the D.C. Superior Court when it vacated his conviction.[4]  Id. at 20.  Once again, Plaintiff has read a non-existent discussion of negligence into that decision.

Plaintiff further misinterprets Fed. R. Civ. P. 12(b)(6) when he maintains that he "can prove facts and circumstances which in support of his claims that would allow him relief and thus his claims should not be dismissed."  Pl. Opp. at 20.  Plaintiff failed to plead facts that would support his claims for relief.  While he has made allegations concerning the particulars of Defendant's alleged negligence, he has failed adequately to rebut any of Defendant's arguments establishing that his claims for relief should be barred because of: (1) Plaintiff's failure to comply with the FTCA's two year statute of limitations; (2) Plaintiff's failure to exhaust negligence claims at the administrative level; and (3) the applicability of the discretionary function exception to allegations of negligence advanced by Plaintiff.  Accordingly, his remaining claims should be dismissed with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[4] This is not the first time in his Opposition that Plaintiff has misapplied Fed. R. Civ. P. 12(b)(6).  Although he accurately notes in Section D of his opposition that "the Court must assume that the facts pleaded in the Complaint are true and draw all factual inferences in favor of the non-moving party," he blatantly ignores that rule when he asserts that Defendant confirmed the falsity of Malone's report and the obvious fatal defect in the government's criminal case. See Pl. Opp. at 7, n. 3 (citing Defendant Supplemental Motion at 4).  Defendant made no such confirmation, it was merely making its argument according to the standards prescribed by Rule 12.

16

## IV.    **CONCLUSION**

WHEREFORE, Defendant respectfully submits that Defendant's Motion to Dismiss, as to Plaintiff's negligence claims, should be granted and that the entire Amended Complaint should be dismissed with prejudice.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

May 17, 2007

17

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Defendant's Reply to Plaintiff's

Opposition to Defendant's Supplemental Motion to Dismiss has been made by the U.S. District Court

Electronic Filing System or, if this means fails, then by mailing copies thereof to:

**Richard G. Lillie**
**Lillie & Holderman**
**75 Public Square, Suite 1313**
**Cleveland, OH  44113-2001**

on this 17th day of May, 2007.

_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 616-0739
