Westlaw.

--- F.3d ----  Page 1
--- F.3d ----, 2007 WL 1597855 (C.A.11 (Fla.)), 20 Fla. L. Weekly Fed. C 686
**(Cite as: --- F.3d ----)**

**Dyer** v. **Lee**
C.A.11 (Fla.),2007.
Only the Westlaw citation is currently available.
United States Court of Appeals,Eleventh Circuit.
Ruth **DYER**, Plaintiff-Appellant,
v.
Shannon **LEE**, John J. Truitt, Thomas F. Humann, III, Ryan E. Tutt, Defendants-Appellees.
**No. 06-14680.**

June 5, 2007.

**Background:** Arrestee brought § 1983 action against sheriff's deputies, alleging use of excessive force. The United States District Court for the Middle District of Florida, No. 05-00237-CV-FTM-29-DNF, John E. Steele, J., 2006 WL 2092264, granted summary judgment for defendants, and arrestee appealed.

**Holding:** The Court of Appeals, Stahl, Circuit Judge, held that action was not barred by *Heck v. Humphrey*, even though arrestee was convicted of resisting arrest with violence in state court, and successful § 1983 suit might have indicated that arrestee acted in self-defense.

Reversed and remanded with instructions.

**[1] Obstructing Justice 282 ⇐ 3**

282 Obstructing Justice
   282k3 k. Resisting or Obstructing Execution of Process. Most Cited Cases
The lawfulness of the arrest is not an element of the offense of resisting arrest with violence, under Florida law. West's F.S.A. § 843.01.

**[2] Civil Rights 78 ⇐ 1088(4)**

78 Civil Rights
   78I Rights Protected and Discrimination Prohibited in General
      78k1088 Police, Investigative, or Law Enforcement Activities
         78k1088(4) k. Arrest and Detention. Most Cited Cases
Arrestee's § 1983 action for excessive force was not barred by Supreme Court's *Heck v. Humphrey* decision, holding that a § 1983 action for damages in which a judgment for the plaintiff would necessarily imply the invalidity of a state court conviction is barred unless the conviction has already been invalidated, even though arrestee was convicted of resisting arrest with violence in state court, and successful § 1983 suit might have indicated that arrestee acted in self-defense, an affirmative defense to charge of resisting arrest; § 1983 suit would not necessarily establish such affirmative defense, as court could not say, to a logical certainty, that every act of violence by arrestee was charged in the information, and that every such act was act of self-defense in response to officers' use of excessive force. 42 U.S.C.A. § 1983.

**[3] Civil Rights 78 ⇐ 1088(5)**

78 Civil Rights
   78I Rights Protected and Discrimination Prohibited in General
      78k1088 Police, Investigative, or Law Enforcement Activities
         78k1088(5) k. Criminal Prosecutions. Most Cited Cases
As long as it is possible that a § 1983 suit would not negate the underlying conviction, then the suit is not barred by Supreme Court's *Heck v. Humphrey* decision, holding that a § 1983 action for damages in which a judgment for the plaintiff would necessarily imply the invalidity of a state court conviction is barred unless the conviction has already been invalidated. 42 U.S.C.A. § 1983.

**[4] Malicious Prosecution 249 ⇐ 34**

249 Malicious Prosecution

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---- Page 2
--- F.3d ----, 2007 WL 1597855 (C.A.11 (Fla.)), 20 Fla. L. Weekly Fed. C 686
**(Cite as: --- F.3d ----)**

249IV Termination of Prosecution
    249k34 k. Necessity. Most Cited Cases
One element of the cause of action for malicious prosecution is termination of the prior criminal proceeding in favor of the accused, out of concerns for finality and consistency.

**[5] Civil Rights 78 🔑 1088(5)**

78 Civil Rights
   78I Rights Protected and Discrimination Prohibited in General
      78k1088 Police, Investigative, or Law Enforcement Activities
         78k1088(5) k. Criminal Prosecutions. Most Cited Cases
For a § 1983 action for damages to be barred by Supreme Court's *Heck v. Humphrey* decision, holding that a § 1983 action for damages in which a judgment for the plaintiff would necessarily imply the invalidity of a state court conviction is barred unless the conviction has already been invalidated, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory. 42 U.S.C.A. § 1983.

Michael R. McDonnell, Colleen J. MacAlister, McDonnell Trial Lawyers, Naples, FL, for Dyer.
Bruce Wallace Jolly, Purdy, Jolly & Giuffreda, P.A., Ft. Lauderdale, FL, for Defendants-Appellees.

Appeal from the United States District Court for the Middle District of Florida.

Before BARKETT, KRAVITCH and STAHL,[FN*] Circuit Judges.
STAHL, Circuit Judge:
***1** In this case we are asked whether *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), bars a plaintiff's suit under 42 U.S.C. § 1983 for the use of excessive force during her arrest. We conclude that a successful § 1983 suit would not contradict her underlying conviction, and thus her suit is not *Heck*-barred. Therefore, we reverse.

I. BACKGROUND

Because the case was disposed of on summary judgment, we recite the facts in the light most favorable to the plaintiff, the non-moving party. See *Bircoll v. Miami-Dade County,* 480 F.3d 1072, 1075 n. 1 (11th Cir.2007).

On March 13, 2003, plaintiff Ruth Dyer ("Dyer") left the Ridgeport Pub, a restaurant in Naples, Florida, and, while intoxicated, sat down in the driver's seat of a Toyota Paseo belonging to Dwayne Dyer, her then-boyfriend (and current husband). The manager of the restaurant called a cab for Dyer and also called the Collier County Sheriff's Office to ensure that she did not drive intoxicated. In fact, Dyer was not intending to drive and had called her boyfriend to come get her and drive her home to Fort Myers.

Deputy Truitt arrived on the scene, followed shortly thereafter by Deputies Tutt and Lee. They asked for Dyer's driver's license, but she told them that she didn't have it, and that she was intoxicated and waiting for her boyfriend to come get her. Deputy Humann then arrived and asked Dyer to get out of the car. He attempted to perform field sobriety tests but Dyer refused, repeating that she was not driving, and saying, "Just go ahead and arrest me." Humann then handcuffed Dyer. Dyer asked that her hands be cuffed in front because of an arm injury, but Humann refused and cuffed her hands behind her back. Humann announced that Dyer was under arrest and began to read her the Florida implied consent notice.[FN1] Dyer protested that she had not been driving and grew agitated. Truitt and Tutt stood at Dyer's side to hold her still, while Humann placed his hand over her mouth to quiet her while he read the implied consent notice. Dyer then kicked Humann in the leg. At that point, the deputies told Dyer that she was also under arrest for battery on a police officer, and they placed her in the back of the patrol car.

At this juncture Dwayne Dyer arrived on the scene. Deputy Truitt then noticed that Ruth Dyer had moved her cuffed hands from behind her back to her front,[FN2] to ease the pain in her arms. Humann pulled Dyer out of the patrol car and, with some struggle, recuffed her hands behind her and returned her to the patrol car.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2007 WL 1597855 (C.A.11 (Fla.)), 20 Fla. L. Weekly Fed. C 686  
**(Cite as: --- F.3d ----)**

Page 3

According to Dyer, during this recuffing the defendants shoved her against the car, slammed her head against the car, kneed her in the leg and lower back, and sprayed her with pepper spray. Dyer resisted during the recuffing and again kicked the deputies.

Humann used an unauthorized cuffing technique when he cuffed Dyer the second time, placing both cuffs each around both wrists, with one wrist on top of the other. Once subdued, she was placed back in the rear of the patrol car. According to Dwayne Dyer, after the altercation had ended, Humann opened the door to the patrol car and again sprayed Dyer with pepper spray.

**\*2** Dyer was transported and charged with driving under the influence ("DUI") and three counts of battery on a law enforcement officer. The DUI charge was later dropped, and one count of resisting arrest with violence was added. On August 12, 2003, she pled no contest to a single charge of resisting with violence, but because of a subsequent parole violation the verdict was changed to guilty on September 28, 2004. She was sentenced to one year of community control, followed by one year of probation.

On May 18, 2005, Dyer began the current action seeking damages from Lee, Truitt, Humann, and Tutt (the "defendants") under 42 U.S.C. § 1983. Dyer claimed that, through their use of excessive force during her arrest, the defendants deprived her of her constitutional rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. On July 26, 2006, the district court granted defendants' motion for summary judgment, saying that Dyer's § 1983 suit was barred by *Heck v. Humphrey.* This timely appeal followed.

## II. DISCUSSION

We review *de novo* the district court's grant of summary judgment, drawing all facts and inferences in the light most favorable to Dyer. See *Bircoll,* 480 F.3d at 1081 n. 12.

In *Heck v. Humphrey,* the Supreme Court held that when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487, 114 S.Ct. 2364. The Court gave the following as an example of a § 1983 suit that would be barred:A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest .... He then brings a § 1983 action against the arresting officer seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata the § 1983 action will not lie.

*Id*. at 487 n. 6, 114 S.Ct. 2364 (citations omitted) (emphasis in original).

[1] This might seem at first to dispose of the issue before us, except that the use of excessive force may not necessarily make Dyer's arrest unlawful, particularly for the DUI and battery charges. *Cf. Ivester v. State,* 398 So.2d 926, 930 (Fla.Dist.Ct.App.1981) (noting distinction between arrest and unlawful force used in arrest). Furthermore, the lawfulness of the arrest is not an element of the offense of resisting arrest with violence. *State v. Espinosa,* 686 So.2d 1345, 1347 (Fla.1996); *State v. Davis,* 652 So.2d 942, 943 (Fla.Dist.Ct.App.1995); *Delaney v. State,* 489 So.2d 891, 892-93 (Fla.Dist.Ct.App.1986). Therefore, a successful § 1983 claim against an arresting officer for using excessive force does not necessarily negate an element of the underlying charge of resisting arrest with violence, in contrast to the example in *Heck* cited above.

[2] Here, the defendants take a different tack. They argue that, rather than negating an element of the offense, a successful § 1983 suit would establish what would have been an affirmative defense to the underlying offense, namely self-defense. Because a person is entitled to "resist the use of excessive force in

--- F.3d ----
--- F.3d ----, 2007 WL 1597855 (C.A.11 (Fla.)), 20 Fla. L. Weekly Fed. C 686
**(Cite as: --- F.3d ----)**

making the arrest," *State v. Holley,* 480 So.2d 94, 96 (Fla.1985), plaintiff's acts of violence against the defendants would have been justified, defendants argue, and thus could not have formed the basis for her conviction and sentence. The rule in *Heck,* they argue, should operate to bar a suit for this reason just as much as if it negated an element of the offense. The defendants argue that by pleading guilty to resisting arrest with violence, the plaintiff cannot now say that her resistance was justified, which it would have been if the defendants used excessive force.

**\*3** [3] The problem with this approach is that the logical necessity that is at the heart of the *Heck* opinion is not present here. It is not the case that a successful § 1983 suit by the plaintiff would "*necessarily* imply the invalidity of [her] conviction" for resisting arrest with violence. *Heck,* 512 U.S. at 487, 114 S.Ct. 2364 (emphasis added). The Supreme Court underscored the importance of logical necessity in *Heck* with another example:

[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.

*Id.* at 487, n. 7, 114 S.Ct. 2364 (citations omitted) (emphasis in original). In other words, as long as it is possible that a § 1983 suit would not negate the underlying conviction, then the suit is not *Heck*-barred. In the first example in *Heck,* a successful § 1983 suit would necessarily negate one of the elements of the underlying offense; under those circumstances a conviction could not stand, as a matter of law. This is in contrast to the second example where, even following a successful § 1983 suit, there would still exist a construction of the facts that would allow the underlying conviction to stand.

[4] The emphasis on logical necessity is a result of the Court's underlying concern in *Heck:* that § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254, were "on a collision course." *Heck,* 512 U.S. at 492, 114 S.Ct. 2364 (Souter, J., concurring). The Court's decision in *Heck* was in part an extension of the rule set out in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Heck,* 512 U.S. at 481, 114 S.Ct. 2364. If prisoners could challenge the constitutionality of their convictions under § 1983, it would undermine the policy of, *inter alia,* ensuring that state remedies are exhausted before a habeas petition could lie in federal court. Allowing § 1983 to do the work of habeas would create an end-run around the procedures of § 2254. *Preiser,* 411 U.S. at 490, 93 S.Ct. 1827. *Heck* extended that rule to § 1983 suits for damages, which, while they would not result in release for the plaintiffs, would similarly address the underlying constitutionality of the conviction or confinement in a way that is reserved for habeas. *See Heck,* 512 U.S. at 480-81, 114 S.Ct. 2364; [FN3] *id.* at 491, 114 S.Ct. 2364 (Thomas, J., concurring); *id.* at 495, 114 S.Ct. 2364 (Souter, J., concurring) ("Though in contrast to *Preiser* the state prisoner here seeks damages, not release from custody, the distinction makes no difference when the damages sought are for unconstitutional conviction or confinement."). *Preiser* and *Heck* carved out from § 1983's otherwise "broad remedial protection," *Preiser,* 411 U.S. at 488, 93 S.Ct. 1827, certain suits that, because they would negate the underlying conviction and would thus tread on the territory of habeas corpus, were not cognizable under § 1983. *Heck,* 512 U.S. at 481, 486-87, 114 S.Ct. 2364. But that concern simply does not arise unless there is a *necessary* logical connection between a successful § 1983 suit and the negation of the underlying conviction; anything less would not raise the specter of an "end-run" around habeas, nor would it create the problem of two inconsistent judgments arising out of the same facts. *See Nelson,* 541 U.S. at 647, 124 S.Ct. 2117 ("We were careful in *Heck* to stress the importance of the term 'necessarily.' ")

Other courts to have addressed the applicability of *Heck* in situations similar to the instant case have emphasized the importance of logical necessity and the limited

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 1597855 (C.A.11 (Fla.)), 20 Fla. L. Weekly Fed. C 686
**(Cite as: --- F.3d ----)**

Page 5

scope of the *Heck* holding. *See, e.g., Thore v. Howe,* 466 F.3d 173, 180 (1st Cir.2006) ("A § 1983 excessive force claim brought against a police officer that arises out of the officer's use of force during an arrest does not necessarily call into question the validity of an underlying state conviction [of assault on a police officer] and so is not barred by *Heck*."); *VanGilder v. Baker,* 435 F.3d 689, 692 (7th Cir.2006) (holding that a successful § 1983 suit for excessive force would not imply the invalidity of the underlying conviction for resisting a law enforcement officer); *Smith v. City of Hemet,* 394 F.3d 689, 698 (9th Cir.2005) (en banc) (holding that *Heck* does not bar § 1983 suit because conviction for resisting arrest could stand based on pre-arrest acts of resistance, and thus the fact that arrest may have been unlawful due to excessive force did not negate the underlying conviction); *Sanford v. Motts,* 258 F.3d 1117, 1119 (9th Cir.2001) (holding that *Heck* does not bar § 1983 suit because record did not clearly establish whether excessive force took place during, or after, the arrest); *Martinez v. City of Albuquerque,* 184 F.3d 1123, 1125 (10th Cir.1999) (holding that *Heck* does not bar § 1983 suit because the record did not rule out that plaintiff could have been convicted for offenses prior to arrest, and that, even if he were not, jury could find under New Mexico law that "police officers effectuated a lawful arrest ... in an unlawful manner," thus not negating underlying conviction); *Nelson v. Jashurek,* 109 F.3d 142, 145-46 (3d Cir.1997) (holding that *Heck* does not bar § 1983 suit because a finding of excessive force would not necessarily imply that arrest was unlawful under Pennsylvania law). *But see Hainze v. Richards,* 207 F.3d 795, 798 (5th Cir.2000) (holding that a § 1983 claim for excessive force "is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events").

**\*4** In this circuit, we have previously allowed § 1983 suits for excessive force to proceed in the face of a *Heck* challenge. *See Willingham v. Loughnan,* 261 F.3d 1178, 1183 (11th Cir.2001) ("[A] finding of excessive force by the jury in this civil case does not necessarily call into question the validity of section 1983 Plaintiff's criminal conviction [for attempted murder and battery of an officer]."), *cert. granted and vacated on other grounds,* 537 U.S. 801, 123 S.Ct. 68, 154 L.Ed.2d 2 (2002).[FN4]

These cases do not address the specific argument put forward here, that a successful § 1983 suit should be barred because it would establish that the plaintiff would have had an affirmative defense to the underlying charge. They do, however, underscore that courts will allow § 1983 suits to proceed when it is possible that the facts could allow a successful § 1983 suit and the underlying conviction both to stand without contradicting each other.

**\*5** Turning to the case at hand, Dyer pled guilty to the following charge:
On or About March 13, 2003[,] in Collier County, Florida, did knowingly and willfully resist, obstruct[,] or oppose an officer to wit: Deputy Humann or Deputy Truitt or Deputy Tutt, in the lawful execution of a legal duty, to wit: conducting an arrest, by offering or doing violence to the person of said officer, contrary to Florida Statute 843.01.[FN5]

Since the plaintiff pled guilty, this is the only official record of the facts underlying the plaintiff's conviction and sentence, and it does not specify any particular acts of violence, when they occurred, or even to which of the three deputies they were directed. Even assuming that we would bar a § 1983 suit if its success would imply that there would have been an affirmative defense to the underlying charge, to say that Dyer's claim is *Heck*-barred we would then have to say, to a logical certainty, that every act of violence-every kick, punch, etc.-by Dyer during the entire episode is charged in the information. Furthermore, we would have to say that every one of those violent acts was an act of self-defense in response to the officers' use of excessive force and therefore would have been justified. To read the information that way, when it plainly says no such thing, would be going many steps too far.

To demonstrate this, we can simply look at the beginning and at the end of the altercation. Starting with the beginning, the parties agree that Dyer's first violent act was kicking Deputy Humann in the leg while she was being placed under arrest for DUI (a charge later dropped). The alleged excessive force did not occur until well after that point, when she had already been handcuffed, placed in the patrol car, and then removed from the patrol car. There is therefore no argument that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 1597855 (C.A.11 (Fla.)), 20 Fla. L. Weekly Fed. C 686
**(Cite as: --- F.3d ----)**

Page 6

Dyer's initial kick could have been justified as self-defense. Even if the rest of her kicks were in direct response to the defendants' excessive force, the conviction and sentence would still be able to stand based on that initial kick.[FN6]

Turning to the end of the altercation, for it to be the case that a successful § 1983 suit would contradict the underlying conviction, each act of excessive force by the officers must have been met by an act of violence by Dyer, which was in turn part of the underlying conviction.[FN7] Therefore, so long as the last act in the altercation was one of excessive force by the police,[FN8] a § 1983 suit on that basis would not negate the underlying conviction.

These two scenarios are examples of the more general point that there is no need, based on the information in the underlying conviction, to conclude necessarily that all of plaintiff's acts of violence were also acts of self-defense, or that each act of excessive force by the defendants was met by an act of violence by Dyer that was then charged in the information. A reasonable jury could, without too much trouble, find both that the defendants used excessive force, and that not all of plaintiff's violent acts were justified as self-defense.[FN9] In other words, the determination is ultimately factual, and thus we cannot say, as a matter of law, that a successful § 1983 suit would necessarily negate the underlying conviction given the facts in the record.[FN10] The distinction between this case and the first example in *Heck* is apposite: in the example, a finding of excessive force would have negated an element of the offense-no conviction could stand after that, as a matter of law; here, as in the second example in *Heck,* there is a version of the facts which would allow the conviction to stand. That is sufficient, under *Heck,* to allow the § 1983 suit to proceed.[FN11] *Cf. Hughes v. Lott,* 350 F.3d 1157, 1161 (11th Cir.2003) (allowing § 1983 action for unreasonable search and seizure to proceed because the facts regarding underlying conviction were unknown on the record, and thus it was impossible to say that a successful § 1983 suit would negate that conviction).

**\*6** [5] In summary, for *Heck* to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory. Here, that is not the case. Indeed, the factual scenario that would force the two to contradict each other requires such a tightness of events as to be almost implausible-no violent act of the plaintiff could be unprovoked and no excessive force by the defendants could go unanswered. To allow *Heck* to bar a § 1983 suit under these circumstances would be to stretch it well beyond its limited holding. As the Seventh Circuit stated:

Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages. Put another way, police subduing a suspect could use as much force as they wanted-and be shielded from accountability under civil law-as long as the prosecutor could get the plaintiff convicted on a charge of resisting. This would open the door to undesirable behavior and gut a large share of the protections provided by § 1983.

*VanGilder,* 435 F.3d at 692. *Heck* was not intended to be a shield to protect officers from § 1983 suits. It was intended to protect habeas corpus and promote finality and consistency. Provided those goals are met, a § 1983 suit is not barred by *Heck*.[FN12]

### III. CONCLUSION

**\*7** For the forgoing reasons, we REVERSE the decision of the district court and REMAND with instructions to deny summary judgment to defendants.

FN\* Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

FN1. Under Florida law, those who drive in the state are deemed to have given their implied consent to physical or chemical tests for alcohol levels in their blood or breath, or risk suspension of their driving privileges. Fla. Stat. § 316.1932.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 1597855 (C.A.11 (Fla.)), 20 Fla. L. Weekly Fed. C 686
**(Cite as: --- F.3d ----)**

Page 7

FN2. According to the parties, this is known as "slipping." The cuffed person steps through her cuffed arms to bring her arms from the back to the front.

FN3. After discussing the *Preiser* decision and the conflicts between habeas and § 1983, the majority ultimately reached its conclusion in *Heck* by analogizing § 1983 to the tort of malicious prosecution. *Heck,* 512 U.S. at 484, 114 S.Ct. 2364. One element of that cause of action is termination of the prior criminal proceeding in favor of the accused, out of concerns for finality and consistency. *Id.* at 484-85, 114 S.Ct. 2364. Otherwise, there could be two conflicting judicial resolutions arising out of the same set of facts. The majority thus based its holding on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486, 114 S.Ct. 2364. But the majority's analysis nonetheless proceeds from the same concerns as in *Preiser* of the potential overlap between § 1983 and habeas corpus. *Id.* at 480-81, 93 S.Ct. 1827; *see id.* at 491, 93 S.Ct. 1827 (Thomas, J., concurring); *Nelson v. Campbell,* 541 U.S. 637, 646, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004) (noting that "civil rights damages actions ... fall at the margins of habeas").

FN4. *See also Wells v. Cramer,* 158 Fed.Appx. 203, 203 (11th Cir.2005) (unpublished opinion) ("A plaintiff may prevail on a claim for excessive force without necessarily implying the invalidity of the underlying conviction for the offense giving rise to the excessive force. To the extent that Wells's complaint alleged an excessive use of force after he was arrested, restrained and posed no threat to the defendant officers, his section 1983 action, if successful, would not necessarily imply the invalidity of his underlying conviction and is not *Heck*-barred.") (citations omitted). As an unpublished opinion, *Wells* is not binding authority. 11th Cir. R. 36-2.

FN5. "Whoever knowingly and willfully resists, obstructs, or opposes any officer as defined in § 943.10(1), (2), (3), (6), (7), (8), or (9); member of the Parole Commission or any administrative aide or supervisor employed by the commission; parole and probation supervisor; county probation officer; personnel or representative of the Department of Law Enforcement; or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084." Fla. Stat. § 843.01.

FN6. The defendants attempt to argue that the information must also have included the kicks at Deputies Truitt and Tutt, which did not occur until later in the altercation. Even if that would change the result here-and we do not see how it would-the information charged the plaintiff in the disjunctive. She was charged with violence against Humann *or* Truitt *or* Tutt.

FN7. If the excessive force was not met by resistance by Dyer, then that excessive force could not have been used as a defense to the underlying conviction. Therefore, that force could support a § 1983 suit without negating the underlying conviction.

FN8. It appears that this might have been the case. According to the plaintiff's version of the facts, some of the excessive force occurred after she had been subdued, recuffed, and returned to the patrol car.

FN9. In *Adams v. Dyer,* No. 06-1125, --- Fed.Appx. ----, ----, 2007 WL 431511, at *3 (10th Cir. Feb. 9, 2007) (no relation), the Tenth Circuit found that a § 1983 suit against

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 1597855 (C.A.11 (Fla.)), 20 Fla. L. Weekly Fed. C 686
**(Cite as: --- F.3d ----)**

Page 8

officers for use of excessive force was *Heck*-barred because the jury in the trial for the underlying offense of resisting arrest specifically heard and *rejected* an excessive-force defense. Similarly, in *McCann v. Neilsen,* 466 F.3d 619, 621 (7th Cir.2006), the Seventh Circuit held that, although "a plaintiff who has been convicted of resisting arrest or assaulting a police officer during the course of an arrest is not *per se Heck*-barred from maintaining a § 1983 action for excessive force stemming from the same confrontation," he will be barred if his § 1983 complaint makes specific factual allegations that are inconsistent with the facts upon which his criminal convictions were based.

FN10. In a similar case, the Fifth Circuit held that *Heck* barred a § 1983 claim based on excessive force, because it would imply that the plaintiff could have had a self-defense justification for his underlying conviction, battery of an officer. *Hudson v. Hughes,* 98 F.3d 868, 873 (5th Cir.1996). The court in *Hudson* said that whether or not the police used reasonable force related to the degree of resistance by the plaintiff and whether it was justified. Because that resistance formed the basis of the battery charge, the conviction would be negated if the resistance was found to be justified. *Id.* We disagree with the reasoning of the Fifth Circuit for the reasons discussed in this opinion. However, even if we were to agree that such a scenario had the logical connection that *Heck* requires, this case would still be distinguishable. Here, unlike in *Hudson,* there are facts in the record from which a reasonable jury could draw the conclusion that at least some of Dyer's resistance was not in response to the defendants' excessive force. *See Ballard v. Burton,* 444 F.3d 391, 401 (5th Cir.2006) (concluding that facts would allow a § 1983 claim and a conviction for assault on a police officer to coexist).

FN11. Dyer focuses on the question of what events made up the "arrest" and whether some of the excessive force took place after the arrest, in which case it could not have also been the basis for her charge of resisting arrest. This is another example of how the facts as they stand in the record could be read to allow both the § 1983 suit and the underlying conviction. Thus, it is not necessary for us to reach the specific question of when the arrest was completed. Furthermore, unlike the plaintiff, we do not read the district court's opinion as relying on a broad definition of the "arrest process" as distinct from the "arrest" (a notion for which there is no authority in the cases on excessive force or resisting arrest). Rather, the district court based its decision on its reasoning that "the facts supporting plaintiff's excessive force claim *could* have formed the basis for a defense to the resisting arrest with violence offense." *Dyer v. Lee,* No. 05-00237, 2006 WL 2092264, at *5 (M.D.Fla. July 26, 2006) (emphasis added). While this is true, it is not true that those facts *must* have formed the basis for a defense-and that is the crux of our holding today.

FN12. Because of our holding today, we need not address the separate question of whether summary judgment was improper for Deputy Lee even if it were proper for Humann, Truitt, and Tutt. Plaintiff's § 1983 claim against Lee is derivative of the claims against the other defendants, and therefore summary judgment should be denied as to all four defendants.

C.A.11 (Fla.),2007.
Dyer v. Lee
--- F.3d ----, 2007 WL 1597855 (C.A.11 (Fla.)), 20 Fla. L. Weekly Fed. C 686

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.