### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY BRAGDON, | : |
| | : |
|       Plaintiff, | : |
| | : |
|    v. | :   Civil Action No. 06-0258 (JR) |
| | : |
| UNITED STATES OF AMERICA, *et al.*, | : |
| | : |
| | : |
|       Defendants. | : |

### MEMORANDUM

In this suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, plaintiff Anthony Bragdon asserts that the actions and inactions of agents of the Federal Bureau of Investigation and Department of Justice caused him to be wrongfully convicted of crimes for which he served many years in prison before his conviction was ultimately vacated. Finding no waiver of sovereign immunity as to plaintiff's claims for false imprisonment, malicious prosecution, and infliction of emotional distress, I previously granted the defendants' motion to dismiss these claims. The defendants now move to dismiss plaintiff's remaining claims, which are for negligence and negligent hiring, training, and supervision. For the reasons stated below, that motion will be **granted**.

### Background

Because the facts have been laid out in detail in previous opinions in this case, see Dkt. 21, and in Bragdon v.

Malone, 425 F. Supp. 2d 1 (D.D.C. 2006), they will only be briefly restated here.  In 1992, Bragdon was sentenced to 30 years' imprisonment after being convicted of assault with intent to rape while armed and possession of a firearm during a crime of violence.  In April 1997, while Bragdon was serving his sentence, the Office of the Inspector General of the Department of Justice issued a report entitled "The FBI Laboratory: An Investigation Into Laboratory Practices and Alleged Misconduct in Explosive-Related and Other Cases."  The report identified an FBI agent who had conducted fiber analyses and testified at Bragdon's trial, Michael Malone, as an agent who falsified his work.  An independent scientist completed a report on of Malone's work in Bragdon's case and documented several instances of overstatement or error in Malone's final report and trial testimony.  This report was forwarded by the United States to Bragdon's counsel on August 13, 2001.  In response, on March 27, 2002, Bragdon petitioned the Superior Court of the District of Columbia to set his conviction aside.  Bragdon's petition was granted and his conviction was vacated on March 13, 2003.  Bragdon filed the administrative complaint underlying this action on March 9, 2005. This suit was filed in February 2006.

The United States' present motion argues that both of Bragdon's remaining claims are barred by the FTCA's discretionary function exception.

**Analysis**

A. Standard of Review

Where the FTCA's discretionary function exception applies, the Court lacks subject matter jurisdiction over the case. Cope v. Scott, 45 F.3d 445, 448 (D.C. Cir. 1995). The government's motion to dismiss will therefore be resolved under Fed. R. Civ. P. 12(b)(1). While allegations in the complaint must be construed in the light most favorable to the plaintiff, the Court may also consider materials outside of the pleadings in order to resolve the question of whether it has jurisdiction to hear the case.[1] Haase v. Session, 835 F.2d 902, 906 (D.C. Cir. 1987).

B. Discretionary Function Exception

The Federal Tort Claims Act does not effect a waiver of sovereign immunity for "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). In United States v. Gaubert, 499 U.S. 315, 322-23 (1991), the Supreme Court

---

[1] The plaintiff has moved for leave to file a sur-reply to the motion to dismiss. He has not identified any issues presented "to the court for the first time in the opposing party's reply" which necessitate filing a sur-reply in order to have a full, adversarial airing of the issues, Lewis v. Rumsfeld, 154 F. Supp 2d 56, 61 (D.D.C. 2001), and his motion [Dkt. 28] is accordingly **denied.**

established a two-step test to determine whether the exception is applicable.  Because the "exception covers only acts that are discretionary in nature, acts that involve an element of judgment or choice," the first step requires a determination as to whether any "federal statute, regulation, or policy specifically prescribes a course of action for the employee to follow."  <u>Id.</u> at 322.  If a binding rule exists, "the employee has no rightful option but to adhere to the directive," <u>Berkovitz v. United States</u>, 486 U.S. 531, 536 (1988), and failure to do so "opens the United States to suit under the FTCA."  <u>Loughlin v. United States</u>, 393 F.3d 155, 163 (D.C. Cir. 2004).  In the absence of a binding directive, the second step "determines whether the challenged discretionary act or omission is 'of the nature and quality that Congress intended to shield from tort liability.'"  <u>Id.</u> (quoting <u>United States v. S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 813 (1984)).  "[B]ecause the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, . . . the exception protects only governmental actions and decisions based on considerations of public policy."  <u>Gaubert</u>, 499 U.S. at 323 (internal quotation marks and citation omitted).

Count I of Bragdon's complaint makes the broad brush allegation that he was injured as a result of Malone's and/or the United States' negligence during the course of the underlying criminal investigation.  Count II is pled in similar fashion, asserting that Bragdon was injured because of the United States' negligent failure to "properly interview, hire, train, and supervise its FBI and DOJ personnel".  Compl. at ¶¶ 23-24. Elsewhere, the complaint identifies Malone as an agent who falsified his work, and references the Superior Court's findings that Malone's testimony was either false or unsupported and that he failed to disclose exculpatory evidence.  Id. at ¶¶ 15, 17. In opposing the motion to dismiss, Bragdon quotes Malone's deposition testimony regarding the investigative procedures at the FBI as well as his training.  [Dkt. 25 at 14-17].  Nowhere in his complaint or in his subsequent litigation papers, however, has Bragdon tied Malone's alleged falsifications, misstatements and/or omissions to the negligent violation of any binding directives regarding investigatory practices, or hiring, training, and supervision procedures at the DOJ or FBI.  Indeed, Bragdon has failed to identify any regulations or policies prescribing specific investigative practices or guidelines for the hiring, training, and supervision of FBI and DOJ employees.

The allegations of improper investigatory conduct made in Count I are "inextricably tied to the decision to prosecute

and the presentation of evidence." <u>Gray v. Bell</u>, 712 F.2d 490,
512 (D.C. Cir. 1983). Where this is the case, "the discretionary
function exception applies and preserves governmental immunity."
<u>Sloan v. United States HUD</u>, 236 F.3d 756, 761 (D.C. Cir. 2001).
Bragdon has failed to show a "meaningful way in which the
allegedly negligent investigatory acts could be considered apart
from the totality of the prosecution." <u>Gray</u>, 712 F.2d at 516.
Count I "does not allege any damages arising from the
investigation itself," only harm arising from Bragdon's
subsequent prosecution and conviction. <u>Sloan</u>, 236 F.3d at 762.
Because "[p]rosecutorial decisions as to whether, when and
against who to initiate prosecution are quintessential examples
of government discretion," Count I is barred by the discretionary
function exception. <u>Gray</u>, 712 F.2d at 513. <u>Gaubert</u>'s two step
test confirms this result. At the first step, Bragdon has not
identified any binding directives that were negligently violated.
Moreover, "the sifting of evidence, the weighing of its
significance, and the myriad other decisions made during
investigations plainly involve elements of judgment and choice."
<u>Sloan</u>, 236 F.3d at 762. At the second step, the question of what
scientific protocols ought to be followed in FBI laboratories is
ultimately a question of public policy involving technical
expertise, consideration of the risk of error, and available
financial resources.

The Court also lacks jurisdiction over Bragdon's claim
in Count II for negligent hiring, training, and supervision.
"[I]n the context of supervision, [] in the absence of a
statutory or regulatory regime that sets out the particulars as
to how an agency must fulfill its mandate, the development and
management of a supervisory model is a matter of agency
discretion." Bolduc v. United States, 402 F.3d 50, 61 (1st Cir.
2005). The same is true of hiring and training decisions. In
making hiring decisions, an employer is called to weigh a number
of factors "including budgetary constraints, public perception,
economic conditions, 'individual backgrounds, office diversity,
experience and employer intuition.'" Burkhart v. WMATA, 112 F.3d
1207, 1217 (D.C. Cir. 1997) (quoting Tonelli v. United States, 60
F.3d 492, 496 (8th Cir. 1995)). Likewise, decisions about how
much and what kind of training to provide require "consideration
of fiscal constraints, public safety, the complexity of the task
involved, the degree of harm a wayward employee might cause, and
the extent to which employees have deviated from accepted norms
in the past." Id. Because such decisions are surely "based on
considerations of public policy," Bragdon's claim for negligent
hiring, training, and supervision falls within the scope of the

discretionary function exception and must be dismissed.  <u>Gaubert</u>,

499 U.S. at 322

      An appropriate order accompanies this memorandum.


                      JAMES ROBERTSON
             United States District Judge